1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                         20-CR-135(CBA)
UNITED STATES OF AMERICA,
                                         United States Courthouse
                                         Brooklyn, New York

         -versus-                        February 14, 2022
                                         10:00 a.m.
AWAIS CHUDHARY,

             Defendant.

------------------------------x

         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                BEFORE THE HONORABLE CAROL B. AMON
                   UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  JONATHAN ALGOR, ESQ.
                                ELLEN SISE, ESQ.
                           Assistant United States Attorneys

For the Defendant:         FEDERAL DEFENDERS OF NEW YORK
                           BY:  SAMUEL JACOBSON, ESQ.
                                NORA HIROZAWA, ESQ.



Court Reporter:            Rivka Teich, CSR, RPR, RMR, FCRR
                           Phone:  718-613-2268
                           Email:  RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1      (Video/Telephone conference.)

2      THE COURTROOM DEPUTY: Criminal cause for a status
3 conference, 20-CR-135, United States vs. Chudhary.
4      May the parties state your name for the record,
5 starting with the Government?
6      MR. ALGOR: Good afternoon, your Honor. Jonathan
7 Algor and Ellen Sise for the United States.
8      THE COURT: Good afternoon.
9      MR. JACOBSON: Good afternoon, your Honor. Sam
10 Jacobson and Nora Hirozawa, Federal Defenders for Awais
11 Chudhary, who is on the videoconference with us.
12      THE COURT: Good afternoon.
13      Mr. Jacobson, let me just ask you initially, does
14 your client agree to proceed with audio and video? He can see
15 everyone except for me, is that acceptable for your client in
16 that form?
17      MR. JACOBSON: Yes, your Honor.
18      THE COURT: Have you discussed that with him
19 previously?
20      MR. JACOBSON: On prior occasions, yes.
21      THE COURT: Mr. Chudhary, is it acceptable to you
22 that we proceed in this fashion? You can see the parties and
23 hear the Court, as opposed to coming together courthouse.
24      THE DEFENDANT: That's fine with me, your Honor.
25      THE COURT: I can't understand you.

STATUS CONFERENCE

1            THE DEFENDANT:  I said that's fine with me, your
2    Honor.
3            THE COURT:  Okay.  Mr. Jacobson, you have an
4    application -- (audio interruption) -- filed with the Court
5    you want -- (audio interruption) -- on adjournment.
6            MR. JACOBSON:  Yes, your Honor.  I had a little bit
7    of trouble hearing you just now.  I think the Court is
8    inquiring about our application of the adjournment of the
9    trial.
10           THE COURT:  Yes.
11           MR. JACOBSON:  We do think that it's important for
12   us to have a little bit of extra time so we can meet with
13   Mr. Chudhary and better prepare a defense on his behalf.  So
14   we are still asking for the adjournment of the March date.
15           THE COURT:  You said that you weren't able to meet
16   with him between this conference and the next conference, and
17   this particular conference -- between the last conference and
18   this conference.
19           MR. JACOBSON:  That's right, Judge.  I spoke to
20   Mr. Chudhary very briefly on Thursday.  We are going to try to
21   start meeting with him at the MDC, assuming that it's open for
22   legal business.  Given the number of moving parts and things
23   that we have to accomplish before trial, we think it's to his
24   benefit to have the extra time.
25           THE COURT:  We talked about setting a trial date in

1  October of last year when we set this trial date.  What do you
2  need to do now?  You said that you have to get an expert, that
3  would be an expert both for trial and for the purposes of
4  furthering plea negotiations?
5          MR. JACOBSON:  That's right, Judge.  We're waiting
6  on two finalized expert reports, both of which will require
7  additional meetings with Mr. Chudhary.  We're in the process
8  of trying to reschedule some of the visits.
9          I think given the number of weeks that we have
10 before trial it's not sufficient time, either for the
11 mitigation or to provide expert disclosure and a report to the
12 Government if those experts were to testify at trial.
13         We would also -- in terms of preparing Mr. Chudhary
14 for his potential testimony at trial, and a number of other
15 things that we would have to do with him during in-person
16 visits, including I would add, the discovery review, the crux
17 of which is under protective order so we have to meet with
18 Mr. Chudhary in-person to review it.
19         THE COURT:  Well, the problem is the Government has
20 the problem with one of its main witnesses, which as I
21 remember was in April; is that right Mr. Algor?
22         MR. ALGOR:  That's correct, your Honor.  The UC will
23 be unavailable until the fall.
24         THE COURT:  Mr. Jacobson, that's a long time for
25 your client to wait in prison in connection with this

STATUS CONFERENCE

1   proceeding.  If I grant your application, you have to
2   understand it would be until the fall.  It's not a question of
3   adjourning it for a couple of weeks or a month or something
4   like that, it would be a longer adjournment.
5            MR. JACOBSON:  We understand the constraints on
6   trial dates as well as on the Government's witness for trial.
7   But what we would say is that we would request the earliest
8   possible date that works for the Court and for the
9   Government's witnesses.
10           THE COURT:  You cut in and out.  You want to just
11  state the last thing that you said again.
12           MR. JACOBSON:  We understand the constraints, your
13  Honor.  I think in the end we would request the earliest date
14  possible where the Government's witness is available and Court
15  is available for a trial.
16           THE COURT:  This isn't in essence the Government's
17  problem because the Government is prepared to go to trial at
18  the end of March date.  Is that correct, Mr. Algor, you're
19  prepared to go to trial; is that correct?
20           MR. ALGOR:  Yes, your Honor.
21           THE COURT:  And the problem would be that if we
22  adjourn that date then it becomes a problem of an unavailable
23  witness.  The Government is now ready to go to trial, does
24  your client understand that?
25           MR. JACOBSON:  We believe he does, your Honor.

6

STATUS CONFERENCE

1  THE COURT: Mr. Chudhary, do you understand that the
2  Government is prepared and ready to go to trial in March. If
3  I were to grant your counsel's application, the trial would be
4  adjourned until perhaps of end of August or later because of
5  their witness having a child. Do you understand that?
6  THE DEFENDANT: Yes, I understand that, your Honor.
7  I understand that, your Honor.
8  THE COURT: Do you still want to the Court to
9  adjourn the trial?
10  THE DEFENDANT: I think we don't have like another
11  choice because one of the witnesses is having a baby, like you
12  mentioned, your Honor, so yeah.
13  THE COURT: It's acceptable to you that it would be
14  adjourned until either late August or the fall, is that
15  acceptable to you?
16  THE DEFENDANT: Yes, it's acceptable to me. I said,
17  yes, it's acceptable to me.
18  THE COURT: Mr. Jacobson, is a certain disposition
19  dependent, or at least one of the considerations, is the
20  expert psychological affidavit; is that correct?
21  MR. JACOBSON: Yes, your Honor, that's right. Of
22  course if there is a disposition we would let your Honor know
23  as soon as we reach one.
24  THE COURT: But we have to deal with that issue
25  sooner than later. What is your plan on pursuing that?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

7

STATUS CONFERENCE

1     I want -- (audio interruption) -- as I said
2 repeatedly, the only reason that I'm raising this is the trial
3 date in this case.  Now we've got a problem where we have
4 reserved this March date and you tell me you can't be ready
5 and that throws the whole system into disarray.  I don't
6 want -- (audio interruption) -- I want to settle this if there
7 is going to be a disposition sooner.  This is not going to be
8 raised two weeks before the trial date that we set.
9     So what do you need to do to further those
10 discussions?
11     MR. JACOBSON:  With an adjournment, we're not going
12 to let this linger.  We'll still be full-speed ahead with the
13 mitigation and preparing the expert reports, both to the
14 Government for discussions and also to make expert notice to
15 the Government for trial.  So we're still going to deal with
16 this in as a prompt a manner as we can.
17     As I mentioned, we're going to try to see
18 Mr. Chudhary tomorrow at MDC, if it's open for legal
19 visitations.  And we're in the process of scheduling
20 additional expert meetings with Mr. Chudhary, so those reports
21 can be completed and disclosed as soon as possible.
22     THE COURT:  Assuming that you have the expert meet
23 with Mr. Chudhary, what is your estimate for how long it takes
24 to prepare a report?
25     MR. JACOBSON:  I'd say 30 days from the time they

1    finish their meeting with Mr. Chudhary.  I can't speak exactly
2    to the experts' schedules, but that is my estimate.
3              THE COURT:  How many meetings do they need with
4    Mr. Chudhary in the facility?
5              MR. JACOBSON:  I think only one or two more
6    meetings, Judge.
7              THE COURT:  Have they had meeting with him already?
8              MR. JACOBSON:  Yes, one of them has.  The other
9    still needs a couple of meetings.  For one of these experts it
10   is actually a supplemental report, creating an addendum of a
11   report prepared about a year ago.
12             THE COURT:  This report has been turned over to the
13   Government?
14             MR. JACOBSON:  Yes, your Honor.
15             THE COURT:  What type of expert report is that?
16   What is that report about?
17             MR. JACOBSON:  They are both forensic psychological
18   reports.
19             THE COURT:  Which you intend to use at trial?  You
20   intend to call these experts at trial?
21             MR. JACOBSON:  Yes, your Honor.
22             THE COURT:  So the Government has one expert.  What
23   is the name of that expert?
24             MR. JACOBSON:  Clemente Vega, your Honor.
25             THE COURT:  So you're going to give them a

1  supplemental to that report.  But that person has to meet one
2  more time with Mr. Chudhary?
3              MR. JACOBSON:  One or two more times.
4              THE COURT:  The second expert, why do you need two
5  experts what?  Is the difference with the second expert?
6              MR. JACOBSON:  One expert is a forensic
7  psychologist.  The other expert is an adolescent
8  neuropsychologist who deals with adolescent cognition.
9              THE COURT:  Is this the research dealing with the
10 juvenile brain or the brain not being formed yet, is that what
11 that expert is about?
12             MR. JACOBSON:  Yes, he deals with --
13             THE COURT:  I'm sorry, can you hear me?
14             MR. JACOBSON:  Yes, more or less, yes.  That's
15 correct.
16             THE COURT:  Why would that be a jury issue?  You're
17 not seeking a psychiatric defense, are you?  Or is that a
18 mitigation expert?
19             MR. JACOBSON:  Both, your Honor.  It's mitigation
20 for discussions, and if we were ever before your Honor for
21 sentencing in this case.  But it also goes to the intent
22 element.
23             THE COURT:  I can't hear you.
24             MR. JACOBSON:  It goes to intent at trial.
25             THE COURT:  So both experts you would envision

1   testifying at trial?

2          MR. JACOBSON:  We believe so.

3          THE COURT:  Do you have another expert that deals
4   with the nature of ISIS or is that the first expert?

5          MR. JACOBSON:  That's the third expert, your Honor.
6   We're not prepared to speak today as to who that will be.
7   There is a third expert who we would call at trial.

8          THE COURT:  We have to get ready for trial.  You
9   have to give the Government expert reports.  We can't have
10  experts just dribbling in here at the last minute.  What is
11  the status of that expert?  There is someone who is to counter
12  what the Government's expert says?

13         MR. JACOBSON:  Yes, your Honor.  I can't say
14  definitively who that will be.  We're still in discussions
15  about that internally.

16         What I can say is if the Court wants to set a
17  deadline for defense experts' disclosures, we would be happy
18  to comply with that.  I think that's something -- because I
19  understand the Court's concerns about not wanting to again be
20  in a crunch period as the trial approaches, especially with
21  this adjournment, I think if the Court were to set a date 60
22  or 90 days out for final defense expert disclosures, we would
23  be able to make that happen.

24         THE COURT:  Mr. Algor, you have provided all your
25  experts, correct?

1    MR. ALGOR:  Yes, your Honor.  Then again, though, by
2    this date moving, depending on what the date is, I have to
3    make sure the expert is available.  He was available for the
4    current trial date.  Without a date or --
5    THE COURT:  Everybody seems to be cutting in and
6    out.  Can you -- (audio interruption) -- what did you say?
7    MR. ALGOR:  I don't know the availability of the
8    current expert for the fall.
9    THE COURT:  Here's what I'm going to order, all of
10   the defense expert reports be provided to the Government
11   within 45 days of today.
12   How significant are those reports to any ongoing
13   plea negotiations?
14   MR. JACOBSON:  From our perspective, I think they
15   are pretty significant, Judge.  As I mentioned in my recent
16   filings, they are reports that we discussed with the
17   supervisor at the U.S. Attorney's Office, and the Government
18   is expecting to have those.  And I think they'll inform any
19   decisions that are made.
20   THE COURT:  Let me ask, Mr. Algor.  Is the
21   Government awaiting these reports in terms of their plea
22   negotiations or not?
23   MR. ALGOR:  It's part of the appeal, your Honor.
24   Mr. Jacobson had represented that these reports would be
25   significant and asked for my supervisors to review those in

12
STATUS CONFERENCE

1    making a final determination.  So I can't say that the front
2    office's -- I don't know the front office's decision regarding
3    this appeal until we get those reports.
4            THE COURT:  So they are waiting -- they are agreeing
5    to review those reports before they --
6            MR. ALGOR:  Yes, your Honor, that's correct.
7            THE COURT:  Those reports will be provided.  The
8    Government will -- (audio interruption).
9            THE COURTROOM DEPUTY:  You're cutting out in and out
10   very bad.  I don't think anyone heard you very clearly.
11           THE COURT:  Ms. Campbell, can you hear us?
12           THE COURTROOM DEPUTY:  I can hear you now.
13           THE COURT:  I asked you if 45 days would be
14   effectively be March 28?
15           MR. JACOBSON:  We'll make it happen, Judge.
16           THE COURT:  By March 28 those reports have to be
17   filed, and I'm not giving any extensions for that.  This
18   should have been, in my view, done a long time ago.  I'll set
19   down a status conference on this case on April 14.  I take it
20   by that time, Mr. Algor, the Government can make its decision?
21           MR. ALGOR:  Yes, your Honor.
22           THE COURT:  I want to put this -- (audio
23   interruption).
24           MR. ALGOR:  I heard your question.  Yes, the
25   Government will be prepared to have a final answer regarding

1   disposition by April 14, the next status conference.

2               THE COURT:  I'm going to set a trial down for
3   August 29.  Is that available?

4               THE COURTROOM DEPUTY:  Yes, Judge, August 29.

5               THE COURT:  Ms. Campbell?

6               THE COURTROOM DEPUTY:  August 29 is available.  Can
7   you hear me?

8               THE COURT:  I couldn't hear you until just now.

9               We'll set it down for August 29.

10              I'll exclude time under the Speedy Trial Act on a
11  number of grounds.

12              First of all, that there are ongoing plea
13  negotiations.

14              Second, I'll indicate that this is also done with --
15  this is an application that the -- (audio interruption) -- the
16  trial.  That the Government is ready to go to trial, so it's
17  one that is being done by defense, that's another ground for
18  excluding time.

19              Also, by his request he has made a Government
20  witness unavailable.  So on the unavailability of a key
21  witness is another ground for excluding time.

22              And in the interest of justice and outweighs the
23  best interest of the public and the defendant in the speedy
24  trial.

25              One thing that we have talked about here is the need

STATUS CONFERENCE

1    for an anonymous jury and questionnaires.

2         MR. ALGOR:  We can file that whenever the Court
3    wants us to.

4         THE COURT:  Because of the problems with jury
5    selection, file your counter-request a week from today.  Okay?

6         MR. ALGOR:  We'll do that, Judge.

7         THE COURT:  With regard to the selection of the
8    anonymous jury, let me ask Mr. Algor -- or let me tell
9    Mr. Algor and Mr. Jacobson -- if we can do this perhaps on a
10   modified basis, where the potential juror gives their last
11   name and borough.  I don't see why the defendant would be
12   disadvantaged by that, Mr. Jacobson.

13        MR. JACOBSON:  It still poses the issue of knowing
14   far less about the jurors than we would ordinarily be able to.

15        THE COURT:  Like the difference between Emily and
16   Rose?  I mean, you get so much information from a
17   questionnaire.  I wouldn't do a questionnaire in this case if
18   it wasn't for the nature of the case.  You get so much more
19   information from a questionnaire than you do from a regular
20   voir dire.  I think the parties, as a practical matter,
21   recognize that.  Eliminating a first name, seems to the Court,
22   would solve both concerns.  It would still give information
23   about a last name; and then it would be more difficult, if
24   anyone were inclined to try and trace a juror, for instance.
25        Mr. Algor, do you object to that procedure?

1    MR. ALGOR:  No, I don't, your Honor.  I think you're
2  right, your Honor, that the juror questionnaire -- having just
3  done this this past summer -- gives more information than you
4  would get in a normal voir dire setting.
5    THE COURT:  So Mr. Jacobson, do you seriously object
6  to that?
7    MR. JACOBSON:  No, your Honor.  Our request is the
8  questionnaire.  I think that's right, that we could get more
9  information than we would otherwise.
10    THE COURT:  If you all can agree on a questionnaire,
11  fine.  If not, you'll provide me with your request in two
12  weeks from today, okay.
13    What we'll do is on the 29th we'll have to bring the
14  jurors in, give them the questionnaires.  Have them duplicate
15  it that week.  Bring them back the following week from the
16  29th.  And then go forward with jury selection at that point.
17    Does everybody understand the procedure,
18  Mr. Jacobson?
19    MR. JACOBSON:  Yes, your Honor.
20    THE COURT:  Mr. Algor?
21    MR. ALGOR:  Yes, your Honor.
22    THE COURTROOM DEPUTY:  Sorry to interrupt you.  You
23  said bring the jurors in on the 29th, that's the actual trial
24  date.  We may have to do it a week prior to the 29th.
25    THE COURT:  I can't hear you.

16
STATUS CONFERENCE

1            THE COURTROOM DEPUTY:  Can you hear me now, Judge?
2            THE COURT:  I can't hear you.
3            THE COURTROOM DEPUTY:  Can you hear me better now?
4    Hello?
5            THE COURT:  I can hear you.
6            THE COURTROOM DEPUTY:  Can you hear me now?
7            THE COURT:  Yes, I can hear you now.
8            THE COURTROOM DEPUTY:  The 29th is the actual start
9    date for selection.  We need to bring the jurors in a week
10   prior to the 29th.
11           THE COURT:  I don't see why.  If it's our jurors, I
12   don't see why we can't take that jury pool that's ours on the
13   29th.  We'll need to bring in a pool just for us and we'll
14   handout the questionnaires, then come back and do the
15   selection the following week.  I think that works out.  Just
16   talk to the jury office about that.
17           THE COURTROOM DEPUTY:  I'll do that.  Thank you.
18           THE COURT:  We need a select group of jurors just
19   for us on the 29th.
20           THE COURTROOM DEPUTY:  Okay, Judge.
21           THE COURT:  Any other issues that we need to take up
22   today?  I don't want to be hearing about problems right before
23   the trial date.
24           MR. JACOBSON:  I may have missed it, the time for
25   the April 14 status conference?

17

STATUS CONFERENCE

1      THE COURT:  Can we do 10:00 o'clock?

2      THE COURTROOM DEPUTY:  10:00 a.m. is fine.

3      THE COURT:  Okay.  Any other issues that we need to
4  address?

5      MR. ALGOR:  Not from the Government, your Honor.
6  Thank you.

7      MR. JACOBSON:  Nothing, your Honor.

8      THE COURT:  No discovery issues or anything that are
9  unresolved that you need worked out?

10     MR. JACOBSON:  There are a couple outstanding
11  issues, but the parties are working on it.  I don't think we
12  need the Court's intervention.

13     THE COURT:  Okay.  All right then.

14     THE COURTROOM DEPUTY:  Judge, one last thing.  I
15  think originally you said for the jury questionnaires to be
16  due February 21, then you said two weeks, the 28th.  I want to
17  clarify, which date you want the parties to submit that?

18     MR. JACOBSON:  We'd ask for the two weeks so we have
19  time in the interim to see if we can come to a resolution
20  internally with the Government.

21     THE COURT:  The 28th is fine.

22     THE COURTROOM DEPUTY:  Thank you.

23     THE COURT:  Anything else, Ms. Campbell?

24     THE COURTROOM DEPUTY:  No, Judge, that's all.

25     THE COURT:  We will never do this again.

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1  THE COURTROOM DEPUTY: I'm not sure why everyone is
2  having a bad connection, but this one wasn't the best.
3  THE COURT: If there is nothing further, all right.
4  Just for the defendant's sake, the next time we'll
5  be in court. It won't be this much distraction. I know it's
6  difficult for you as well, Mr. Chudhary. It will be in court
7  and it will be better.
8  Thank you everyone.
9  MR. JACOBSON: Thank you, Judge.
10  MR. ALGOR: Thank you, Judge.
11  (Whereupon, the matter was concluded.)
12  *   *   *   *   *
13  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
14

15  */s/ Rivka Teich*
   Rivka Teich, CSR RPR RMR FCRR
16  Official Court Reporter
   Eastern District of New York
17

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*